# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ODIS WILEY, JR., | 1:12-cv-00144-BAM (HC) |
| Petitioner, | ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, DIRECTING CLERK OF COURT TO ENTER JUDGMENT IN FAVOR OF RESPONDENT, AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY |
| v. | |
| JAMES D. HARTLEY, | [Doc. 1] |
| Respondent. | |

Petitioner is proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Pursuant to 28 U.S.C. § 636(c)(1), the parties have consented to the jurisdiction of the United States magistrate judge.  Local Rule 305(b).

PROCEDURAL BACKGROUND

Following a jury trial in the Kern County Superior Court, Petitioner was found guilty of transporting cocaine base (Cal. Health & Saf. Code,[1] § 11352(a); count 1), three counts of possession of cocaine base for sale (§ 11351.5; counts 2, 4 & 6), and seven counts of selling or offering to sell cocaine base (§ 11352(a); counts 3, 5, 9, 10, 11, 12 & 13).  Petitioner was sentenced to a total term of 10 years and four months.  (LD[2] 1.)

Petitioner filed a timely notice of appeal.  The California Court of Appeal for the Fifth Appellate District affirmed the judgment.  The California Supreme Court denied review.

---

[1] All further statutory references are to the California Penal Code unless otherwise indicated.

[2] "LD" refers to the Lodged Documents submitted by Respondent.

1

Petitioner filed three state post-conviction collateral petitions in the Kern County Superior Court, and all three were denied.

On February 9, 2011, Petitioner filed a petition for writ of habeas corpus in the California Court of Appeal, Fifth Appellate District. The petition was denied on May 19, 2011.

On June 10, 2011, Petitioner filed a petition for writ of habeas corpus in the California Supreme Court. The petition was denied on October 19, 2011.

Petitioner filed a second petition for writ of habeas corpus in the California Supreme Court on February 6, 2012, which is still pending in that court.

Petitioner filed the instant petition for writ of habeas corpus on January 31, 2012. Respondent filed an answer to the petition on May 14, 2012, and Petitioner filed a traverse on June 11, 2012.

## STATEMENT OF FACTS

**Counts 9 and 10**

On February 15, 2008, DEA agents intercepted phone calls between Shirley Sanders and [Petitioner], and between Bridget Vaughn and [Petitioner]. Vaughn said she was "tryin[g] to see some [] CDs." Sanders asked for "DVDs." No specific CD or DVD was mentioned. The DEA case agent opined CD and DVD were coded talk for cocaine base. [Petitioner] arranged to meet Vaughn and Sanders at a fitness club/gym.

DEA agents and Bakersfield police officers then set up surveillance of the location. They observed the following: [Petitioner] exits the gym; Vaughn drives up and parks next to the gym; [Petitioner] gets into [his] car and stays inside for about 30 seconds to a minute, then, he gets out and goes back inside the gym. About five to 10 minutes after Vaughn left, the surveillance team observed the following: Sanders drives up and parks by the gym; [Petitioner] exits the gym and walks to Sander's car; [Petitioner] reaches into his waistband and removes an object; he then gets into Sander's car; after a few minutes, he gets out.

A marked Bakersfield police vehicle stopped Sanders's car though no drug was found, Sanders later admitted-after being arrested on July 13, 2007-that she ate the plastic baggie of cocaine base prior to the officer walking up to her car during the February 15, 2008, stop. She also admitted buying user quantities of cocaine base from [Petitioner] for about one year.

A DEA agent recalled Vaughn's car was stopped as well, but no drugs were found in her possession.

**Count 12**

On February 20, 2008, DEA agents intercepted phone calls between Shabazz Muhammed and [Petitioner]. [Petitioner] asked Muhammed if he wanted

"one of them movies." Muhammed said he wanted "two." No specific movie was mentioned. The DEA case agent opined "movies" was coded talk for cocaine base. [Petitioner] arranged to meet Muhammed at the fitness club/gym.

DEA agents and Bakersfield police officers then set up surveillance of the location. They observed the following: [Petitioner] arrives in his truck; he gets out and walks into the gym; Muhammad arrives in his car; Muhammed gets out and walks into the gym; a few minutes later, Muhammed exits the gym and gets back into his car and drives off.

A marked Bakersfield police vehicle stopped Muhammed's car. No drugs were found on Muhammed or in his car.

**Count 11**

On February 23, 2008, DEA agents intercepted phone calls between Donte White and [Petitioner]. [Petitioner] asked White, "how many of them outfits your trying to get?" White said, "two of them." No specific type of outfit was mentioned. The DEA case agent opined "outfits" was coded talk for cocaine base. [Petitioner] arranged to meet White at a Wing Stop fast food restaurant.

DEA agents then set up surveillance of the location. They observed White's car drive into the restaurant parking lot. As [Petitioner's] truck approached the area, DEA agents intercepted another phone call wherein [Petitioner] and White changed the meeting place to a nearby McDonald's. The surveillance team followed White's car. DEA agents observed [Petitioner's] truck parked in the McDonald's parking lot. White pulled into the parking lot. White then got out of his car, walked to [Petitioner's] truck, opened the passenger side door, and got into the truck. A few minutes later, White got out of the truck and walked back to his car and drove away.

Due to unavailability then of a marked police vehicle, White's car was not stopped.

**Count 13**

DEA agents intercepted phone calls between Misty Garcia and [Petitioner]. [Petitioner] asked Garcia if she wanted "that same outfit." Garcia replied, "Yea, yea, yea." Again, the reference to outfit was nonspecific. On February 24, 2008, they agreed to meet at the Valley Plaza Mall.

DEA agents and Bakersfield police officers set up surveillance of the location. They observed [Petitioner's] truck parked in the mall parking lot. Garcia walked toward and got into the truck. About five minutes later, she got out of the truck and went back into the mall.

A uniformed Bakersfield police officer stopped and searched Garcia. Though no drugs were found on her, inside her purse were a scale and a large sum of money.

**Counts 3 and 4**

On February 25, 2008, DEA agents intercepted phone calls between Milton Harling and [Petitioner]. Harling said to [Petitioner], "[S]ee I don't want to spend it, that's what I'm saying, I'm ready for you . . ." the DEA case agent

3

explained that Harling was indicating that he had money to spend for cocaine base, that he did not want to spend the money on anything else but the drug, and that he wanted the drug now. [Petitioner] arranged to meet Harling at a car shop.

DEA agents and Bakersfield police officers set up surveillance of the location. They observed Harling's car arrive. Harling got out and walked to [Petitioner's] truck. He went into the truck. About 10 to 15 seconds later, Harling got out and got back into his car. Harling then drove away.

A marked Bakersfield police vehicle stopped Harling's car. The officers approached, and then asked Harling to step out of the car. The officers searched Harling and located a small amount of marijuana. When the officers tried to arrest Harling, Harling put something into his mouth. A struggle ensued. The officers saw a substance inside Harling's mouth, and a white film covered Harling's lips. Harling eventually spat the substance onto the driver side seat and floorboard.

The substance was tested and determined to be cocaine base.

**Counts 5 and 6**

DEA agents intercepted phone calls between John Porter and [Petitioner]. In one call, Porter asked [Petitioner] if he had "three of them DVDs." [Petitioner] replied, "So is that what you want, three of them movies." In another call, Porter asked, "[H]ow many DVDs you got with you?" [Petitioner] replied, "[A]ll I got is-with me is . . . one of them DVD and one of them little small CDs." In another call, Porter said to [Petitioner], "I'm just gonna grab . . . two of those DVDs." Again, the references to CD and DVD were nonspecific. They arranged to meet on February 27, 2008, at a side street by a park.

DEA agents and Bakersfield police set up surveillance of the location. They observed [Petitioner's] truck park on the street. A few minutes later, Porter's car drove by. [Petitioner] and Porter then drove their vehicles in tandem into a cul de sac. Three to four minutes later, [Petitioner] and Porter drove their vehicles out of the cul de sac.

A marked Bakersfield police vehicle stopped Porter's car. The officers approached and smelled marijuana. They had Porter step to the rear of the car, by the curb. They searched Porter. As they searched, a small bindle containing a white substance dropped to the ground.

The substance was tested and determined to be cocaine base, totaling about 26.65 grams.

**Counts 1 and 2**

On April 2, 2008, while on patrol in a marked vehicle, Bakersfield police officers saw [Petitioner] pass by in his truck. The officers made a u-turn to follow. [Petitioner] then accelerated, swerved, and came to a sudden stop. [Petitioner] threw several plastic baggies over the roof of the truck. The officers detained [Petitioner], and searched the area where he threw the baggies. They found five plastic baggies inside the truck.

The substance was tested and determined to be cocaine base, totaling about 71 grams.

4

> Agent Plennes testified that one-tenth to two-tenths of a gram of cocaine base is a "user amount." A crime laboratory analyst, Jeanne Spencer, testified that the average amount for a single usage was about 0.12 grams, and that the 71 grams [Petitioner] was arrested for on April 2 was roughly 700 times as high as a single usage amount.

(LD 1 at 1-7.)

## DISCUSSION

I.   Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. The challenged conviction arises out of the Kern County Superior Court, which is located within the jurisdiction of this Court. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320, 327 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *cert. denied,* 522 U.S. 1008 (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir. 1996). The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

II.  Standard of Review

Where a petitioner files his federal habeas petition after the effective date of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), he can prevail only if he can show that the state court's adjudication of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "Federal habeas relief may not be granted for claims subject to § 2254(d) unless it is shown that the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of [the Supreme] Court." Harrington v. Richter, __ U.S. __, 131 S.Ct. 770, 785 (2011) (citing 28 U.S.C. § 2254(d)(1) and Williams v. Taylor, 539 U.S. 362, 412 (2000). Habeas relief is also available if the state court's decision "involved an unreasonable application" of clearly established federal law, or "was based on an unreasonable determination of the facts" in light of the record before the state court. Richter, 131 S.Ct. 785 (citing 28 U.S.C. § 2254(d)(1), (d)(2)). "[C]learly established ... as determined by" the Supreme Court "refers to the holdings, as opposed to the dicta, of th[at] Court's decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. at 412. Therefore, a "specific" legal rule may not be inferred from Supreme Court precedent, merely because such rule might be logical given that precedent. Rather, the Supreme Court case itself must have "squarely" established that specific legal rule. Richter, 131 S.Ct. at 786; Knowles v. Mirzayance, __ U.S. __, 129 S.Ct. 1411, 1419 (2009). Moreover, the Supreme Court itself must have applied the specific legal rule to the "context" in which the Petitioner's claim falls. Premo v. Moore, __ U.S. __, 131 S.Ct. 733, 737 (2011). Under § 2254(d)(1), review is limited to the record that was before the state court that adjudicated the claim on the merits. Cullen v. Pinholster, __ U.S. __, 131 S.Ct. 1388, 1398 (2011). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Richter, 131 S.Ct. at 786.

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceedings, § 2254(d)(2)." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). Both subsections (d)(2) and (e)(1) of § 2254 apply to findings of historical or pure fact, not mixed questions of fact and law. See Lambert v. Blodgett, 393 F.3d 943, 976-77 (2004).

Courts further review the last reasoned state court opinion. See <u>Ylst v. Nunnemaker</u>, 501 U.S. 979, 803 (1991). However, "[w]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." <u>Richter</u>, 131 S.Ct. at 784.

### III.   Fourth Amendment Violation

Petitioner contends the officers' stop of his truck on April 2, 2008 was unconstitutional under the Fourth Amendment.

A federal district court cannot grant habeas corpus relief on the ground that evidence was obtained by an unconstitutional search and seizure if the state court has provided the petitioner with a "full and fair opportunity to litigate" the Fourth Amendment issue. <u>Stone v. Powell</u>, 428 U.S. 465, 494, 96 S.Ct. 3037, 3052 (1976); <u>Woolery v. Arvan</u>, 8 F.3d 1325, 1326 (9th Cir. 1993), *cert denied*, 511 U.S. 1057 (1994). The only inquiry this Court can make is whether petitioner had a fair opportunity to litigate his claim, not whether petitioner did litigate nor even whether the court correctly decided the claim. <u>Ortiz-Sandoval v. Gomez</u>, 81 F.3d 891, 899 (9th Cir. 1996); <u>see</u> also <u>Gordon v. Duran</u>, 895 F.2d 610, 613 (9th Cir. 1990) (holding that because Cal. Penal Code § 1538.5 provides opportunity to challenge evidence, dismissal under <u>Stone</u> was necessary).

The policy behind the <u>Stone</u> Court's analysis is that the exclusionary rule is applied to stop future unconstitutional conduct of law enforcement. <u>Stone</u>, 428 U.S. at 492. However, excluding evidence that is not untrustworthy creates a windfall to the defendant at a substantial societal cost. See <u>Stone</u>, 428 U.S. at 489-90; <u>Woolery</u>, 8 F.3d at 1327-28. Thus, the Ninth Circuit has described the rationale for this rule by saying:

> The holding is grounded in the Court's conclusion that in cases where a petitioner's Fourth Amendment claim has been adequately litigated in state court, enforcing the exclusionary rule through writs of habeas corpus would not further the deterrent and educative purposes of the rule to an extent sufficient to counter the negative effect such a policy would have on the interests of judicial efficiency, comity and federalism.

<u>Woolery</u>, 8 F.3d at 1326; <u>see</u> <u>also</u> <u>Stone</u> , 428 U.S. at 493-494.

California provides defendants such an opportunity in the trial court through California Penal Code section 1538.5. Petitioner in fact filed a suppression motion and the trial court held a

7

hearing and considered the evidence but denied the motion. Because the state court provided Petitioner with a "full and fair opportunity to litigate" his Fourth Amendment issue, the claim must be denied. Stone, 428 U.S. at 494.

IV.   Ineffective Assistance of Trial Counsel

Petitioner claims trial counsel was ineffective for failing to move to suppress evidence obtained as the fruit of the unconstitutional stop and for failing to oppose the motion to consolidate the cases.

Petitioner presented this claim in his state habeas corpus petition and the Kern County Superior Court issued the last reasoned decision rejecting the claim stating:

> Petitioner contends that there was no probable cause to stop his vehicle on April 2, 2008, due to a traffic incident he denies causing. Petitioner contends that the seizure of the cocaine base thrown out of the window and found on his person was illegal. He also states that due to this illegal search and seizure confessions of other codefendants are excludable under the fruit of the poisonous tree doctrine.
>
> Petitioner contends that his counsel was ineffective for not opposing the motion to consolidate case numbers: BF124077A, BF122997A. The People's motion to consolidate those cases was granted on December 10, 2008.
>
> The first case charged eleven counts of possession of cocaine base and offering to sell cocaine base. The second case arose from the traffic collision on or about April 2, 2008. After the collision, Officers observed [P]etitioner throwing bags containing cocaine base out of the window. The total recovered was seventy-one grams approximately fifteen feet from the vehicle in plain view in a yard. Upon seizure of the baggies, additional drugs were discovered in [P]etitioner's vehicle and on his person.
>
> [¶] . . . [¶]
>
> 1. SEARCH AND SEIZURES
>
> . . . Petitioner takes his counsel [to] task for failure to file any suppression motion to exclude the evidence seized on April 2, 2008, and the recorded conversations prior thereto. To prevail in a claim of ineffective assistance of counsel, petitioner must demonstrate that counsel's conduct fell below professional norms causing prejudice. The prejudice must create a probability that there would be a change in the outcome. *Strickland v. Washington* (1984) 466 U.S. 468, 694; *People v. Pope* (1979) 23 Cal.3d 412, 423. Petitioner must demonstrate that he would either be acquitted or receive a lesser sentence. He cannot do so here.
>
> Under the automobile exception, there need be no warrant to search a vehicle or consent up [sic] by the defendant upon a showing of probable cause. *Pennsylvania v. Labron* (1996) 518 U.S. 938, 940; *U.S. v. Ross* (1982) 456 U.S. 798, 799-800; *Carroll v. U.S.* (1925) 267 U.S. 132, 155, 157.

The justification for the automobile exception is that their mobility makes it impractical to secure a search warrant. *Carroll v. U.S.* (1925) 267 U.S. 132, 153; *California v. Carney* (1985) 471 U.S. 386, 390.

Petitioner rear-ended a Honda vehicle driven by an African American female who identified [P]etitioner as the person who caused the collision. She fled, and was unavailable for further interview.

Petitioner sought to escape the scene, but officers blocked his way. Meanwhile, he threw baggies containing cocaine out of the window, which the officers seized fifteen feet from the vehicle. Jeff Martin testified to these facts at the preliminary hearing on October 2, 2008, a further search of [P]etitioner and the vehicle found additional cocaine base. Officers can search the immediate vicinity of the victim to ensure his safety and prevent destruction of contraband. *Arizona v. Johnson* (2009) 555 U.S. 172.

The lawful scope of search extends to closed containers, packages, suitcases, and others when there is probable cause to believe that they contain the object of the search. *California v. Acevedo* (1991) 500 U.S. 565, 574. During a search, where officers discover articles which although not included in any warrant, are reasonably identifiable as contraband, they may seize them whether they are initially in plain sight or come into plain sight subsequently. *Skelton v. Superior Court* (1969) 1 Cal.3d 144, 157. There is a link to criminal behavior wherein [P]etitioner threw drugs out the window after a traffic collision and which the officers found fifteen feet away. Such linkage broadens the scope of the plain view doctrine. *People v. Bradley* (1997) 15 Cal.4th 1229, 1295. Petitioner had been under surveillance for illegal drug sales as evidenced by the recorded telephone calls acquired pursuant to a lawful search warrant. Chad Plennes, an agent for the Drug Enforcement Administration testified to this fact in a preliminary hearing, October 22, 2008.

Prior to the traffic collision on April 2, 2008, [P]etitioner was already facing charges for eleven counts of possessi[ng], transport[ing], and offering to sell cocaine base in BF124077A.

Petitioner contends that because the search was illegal, any derivative evidence such as confessions of codefendants or objects should be excluded as violating the fruit of the poisonous tree doctrine. This doctrine excludes evidence deriv[ed] or otherwise resulting from an illegal search which violates the Fourth Amendment to the U.S. Constitution, and the Fourteenth Amendment as applied to the states. *Marie v. U.S.* (1988) 487 U.S. 533, 536-537; *People v. Williams* (1988) 45 Cal.3d 1268, 1299. Petitioner fails in his argument because there was a valid warrant to record telephone conversations, and the automobile exception precluded a search warrant on April 2, 2008.

The conduct involving the eleven counts alleged in BF124077A, happened at least four months prior to the traffic stop. This lapse in time eroded any deterrent effect on the exclusionary rule vitiating the fruit of the poisonous tree doctrine. *U.S. v. Leon* (1984) 466 U.S. 897, 911; *U.S. v. Ceccollini* (1978) 435 U.S. 268, 278, 280. The question is whether the taint of illegality is so prevalent that it warrants exclusion of such evidence. *Wong Sun v. U.S.* (1963) 371 U.S. 471, 488. The court finds no illegal searches and no illegal taint to warrant exclusions of previous evidence gathered by officers such as the statement of Shirley Sanders.

II. SEVERANCE

Petitioner contends that his counsel's failure to object to the motion to consolidate by Deputy District Attorney Chad Louie constituted incompetence of counsel. The motion was filed November 26, 2008, and granted December 10, 2008.

Petitioner felt that the two cases should not have been consolidated, but fails to state why separate trials would lessen any alleged prejudice.

Since the former case involved eleven counts of drug offenses, and the latter case involved two counts of drug offenses similar to the first case, it made sense to join them for judicial economy and was legally appropriate. *People v. Soper* (2009) 45 Cal.4th 759. Petitioner has the burden to show prejudice from the joinder requiring separate trials.

Petitioner fails to demonstrate any prejudice resulting from the consolidation of the two cases. This is especially the case where any of his customers, such as Shirley Sanders could be a witness for the prosecution in separate trials. As the court of appeals opined, [P]etitioner was able to cross-examine Shirley Sanders, and there was no abuse of [P]etitioner's right of confrontation under the Sixth Amendment of the U.S. Constitution. The appellate court found no ineffective assistance of counsel because a Drug Enforcement Agent's testimony of what Shirley Sanders told him was redundant since Shirley Sanders testified at [P]etitioner's trial. Counsel did object to hearsay testimony by the agent based upon the violation of right to confront witnesses against him. Counsel need not raise frivolous objections especially at the urging of his client. The motion to sever would have no merit given the lack of prejudice resulting from the joinder. *Knowles v. Mirzayance* (2009) 556 U.S. 173. As such there was no ineffective assistance of counsel. Where the appellate court found no ineffective assistance of counsel on these grounds, [P]etitioner cannot raise it anew in habeas corpus. *In re Waltreus* (1962) 65 Cal.2d 218, 225.

There was no illegal search and seizure of the cocaine base. There was no violation of the fruit of the poisonous tree doctrine. Petitioner cannot demonstrate ineffective assistance of counsel on any of the grounds he alleges. The prosecution masterfully built its case gradually culminating in [P]etitioner's conviction. He cannot expect his counsel to extricate him from his predicament. Counsel is not a magician. Rather than blame others for his plight, [P]etitioner should accept responsibility for his actions.

(LD 7 at 1-5.)

Petitioner has failed to demonstrate that the cocaine base and co-defendant's confessions were derived from a search that violated the Fourth Amendment or that counsel was ineffective for failing to move to suppress such evidence. Officer Martin testified that while on routine patrol with his partner in a marked vehicle they observed a disabled car with a stranded motorist. As Officer Martin was waiting to make a U-turn to assist the driver, a truck passed. After Officer Martin made the U-turn, the truck accelerated, swerved toward the side of the road, and hit the rear end of the disabled car. Both officers saw the driver, Petitioner, stick his left arm out of the

driver's side window and throw several plastic baggies over the top of the truck. Petitioner then tried to back up the truck, but Officer Martin's patrol vehicle was blocking it. Petitioner exited his vehicle but was ordered to get back in and was subsequently detained. The officers searched the area where Petitioner threw the plastic baggies, and found several baggies containing a white substance which appeared to be rock cocaine. The officer searched the truck and found clear plastic baggies inside.

Because officers observed Petitioner engage in a traffic violation by swerving to the side of the road and rear-ending the disabled car there was probable cause to stop Petitioner's truck. See Delaware v. Prouse, 440 U.S. 648, 663 (1979). The officers observation of Petitioner throwing several plastic baggies containing a white powdered substance justified the detention of him to search and determine the nature of the disregarded substance. See United States v. Davis, 430 F.3d 345, 354 (6th Cir. 2005) (citing Terry v. Ohio, 392 U.S. 1 (1968). Furthermore, because the officers suspected the white substance thrown from the vehicle to be an illegal substance there was probable cause to arrest Petitioner and search inside his truck. California v. Acevedo, 500 U.S. 565, 574 (1991); United States v. Ross, 456 U.S. 798, 820-821 (1982). Consequently, any motion to suppress would have been futile and there is no basis to find counsel was ineffective. Failure to file a motion to suppress does not constitute ineffective assistance of counsel if the motion would have been futile. See James v. Borg, 24 F.3d 20, 27 (9th Cir. 1994); Lowry v. Lewis, 21 F.3d 344, 346-347 (9th Cir. 1994) (failure to file suppression motion not ineffective assistance where no reasonable possibility motion would have succeeded). Accordingly, the state court reasonably found that trial counsel was not ineffective.

Petitioner also contends that trial counsel was ineffective for failing to move to suppress the statements of Shirley Sanders, Kizzy Scoggins, and Misty Garcia. Petitioner does not set forth the basis for counsel to have sought exclusion of these witnesses' statements. To the extent Petitioner is challenging the taped phone conversations, the officers obtained a valid warrant to record such conversations and there is no basis for counsel to have moved to suppress those statements. (RT 17.) If Petitioner is attempting to challenge the statements made by Shirley Sanders and Kizzy Scoggins to the investigating officers, such challenge is unfounded. The

appellate court properly noted that "when the declarant appears for cross-examination at trial, the Confrontation Clause places no restraints at all on the use of his prior testimonial statements." With regard to Misty Garcia, there is no record of any "testimonial" hearsay that was presented at trial. Accordingly, any challenge to Misty Garcia is also unfounded.

Petitioner also contends trial counsel should have challenged the consolidation of Petitioner's two cases. Improper joinder does not by itself violate the federal Constitution. United States v. Lane, 474 U.S. 438, 446 n.8 (1986). Habeas corpus relief can only be obtained if the joinder resulted in prejudice so great as to deny a defendant his constitutional right to a fair trial. Id. Further, any error can only warrant reversal if the misjoinder resulted in actual prejudice because it had a substantial and injurious effect or influence in determining the jury's verdict. Id. at 449. "In evaluating prejudice, the Ninth Circuit focuses particularly on cross-admissibility of evidence and the danger of 'spillover' from one charge to another, especially where one charge or set of charges is weaker than another." Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004).

The Court has reviewed the record and concurs with the Kern County Superior Court that joinder was not improper in this instance and there is no showing that Petitioner's constitutional right to a fair trial was violated. Both cases involved the same type of charges and narcotic substance, i.e. possession, sale, and/or transportation of cocaine base, and the time period between the two cases was less than one month. The evidence which demonstrated that Petitioner was involved in a drug selling enterprise was cross-admissible, as any of Petitioner's drug customers could have testified in either trial. In addition, the evidence against Petitioner in both cases was strong. Officers listened to several telephone calls involving coded reference to purchasing drugs from Petitioner. In addition, officers conducted surveillance, observed Petitioner involved in numerous drug transactions, and found some of the purchasers to be in possession of cocaine base. Accordingly, the state courts' determination of this issue was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

V.    Credibility of Officers' Trial Testimony

Petitioner appears to challenge the credibility of the officers' trial testimony alleging that they did not follow proper procedures when conducting their investigation.

1    The record does not support Petitioner's claim that his convictions were based solely on
the officers' testimonies.  Rather, there was evidence in the form of numerous recorded telephone
conversations between Petitioner and his alleged customers.  The face-to-face transactions were
observed by officers and the customers were stopped by police shortly after the meetings ended.
Police found cocaine base in the customers' possession on some but not all occasions.  This
evidence was sufficient to find Petitioner guilty of offering to sell cocaine base as determined by
the state appellate court:

> [State] law is well established that the crime of offering to sell cocaine base is committed when the offer to sell is made, and a subsequent actual sale need not be proven in order for a defendant to be convicted of offering to sell.

(LD 1 at 2.)

Petitioner has not set forth nor is this Court aware of any clearly established Supreme Court precedent which holds that relief is available based on a challenge to the credibility of witness testimony without more.  In any event, "the credibility of witnesses is a question for the jury, unreviewable on appeal."  United States v. Delgado, 357 F.3d 1061, 1068 (9th Cir. 2004).  A federal habeas court "may not reweigh the evidence or redetermine the credibility of witnesses." Burger v. Prelesnik, __ F.Supp.2d __, 2011 WL 4484441, *14 (E.D. Mich. 2011) (citing Marshall v. Lonberger, 459 U.S. 422, 434 (1983)).  If the evidence is unclear or would support conflicting inferences, "the federal court 'must presume - even if it does not affirmatively appear in the record - that the trier of fact resolved any such conflict in favor of the prosecution, and must defer to that resolution."  Payne v. Borg, 982 F.2d 335, 338 (9th Cir. 1993) (quoting Jackson v. Virginia, 443 U.S. at 326.)  Accordingly, there is no basis for habeas corpus relief.

VI.    Unconstitutional Convictions

In his last claim for relief, it appears Petitioner is pleading with this Court to grant his claims for relief.  Petitioner contends he "acted with due diligence," and, "irregardless of conclusional arguments [] a pro per/se litigant's right to writ of habeas corpus cannot be bound by actions or inactions of a court appointed appellate counsel on direct appeal."

The Court notes that Petitioner filed his petition in a timely manner, and he is in no way being faulted by proceeding pro se in this action.  As stated herein, Petitioner is not entitled to

habeas corpus relief because there has been no showing that the state courts' determination of the issues was contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

## VII.  Certificate of Appealability

A state prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, and an appeal is only allowed in certain circumstances. Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003).  The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides as follows:

> (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.
>
> (b) There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.
>
> (c)     (1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from–
>
> > (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
> >
> > (B) the final order in a proceeding under section 2255.
>
> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
>
> (3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

If a court denies a petitioner's petition, the court may only issue a certificate of appealability "if jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El, 537 U.S. at 327; Slack v. McDaniel, 529 U.S. 473, 484 (2000). While the petitioner is not required to prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his . . . part." Miller-El, 537 U.S. at 338.

In the present case, the Court finds that reasonable jurists would not find the Court's determination that Petitioner is not entitled to federal habeas corpus relief debatable, wrong, or deserving of encouragement to proceed further. Petitioner has not made the required substantial showing of the denial of a constitutional right. Accordingly, the Court hereby DECLINES to issue a certificate of appealability.

## ORDER

Based on the foregoing, it is HEREBY ORDERED that:

1. The instant petition for writ of habeas corpus is DENIED;

2. The Clerk of Court is directed to enter judgment in favor of Respondent; and

3. The Court declines to issue a certificate of appealability.

IT IS SO ORDERED.

Dated:   **July 13, 2012**              **/s/ Barbara A. McAuliffe**
                                        UNITED STATES MAGISTRATE JUDGE